# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL D. WALKER,

                Plaintiff,

v.

JAMES HEIMGARTNER, et al.,

                Defendants.

            Case No. 15-CV-3230-DDC

## MEMORANDUM AND ORDER

The matter comes before the court on petitioner Michael D. Walker's Petition for Writ of Habeas Corpus (Docs. 1, 3), the State of Kansas' Answer and Return (Doc. 20), and petitioner's Traverse (Doc. 24).  Petitioner challenges his state court convictions and sentence for two criminal counts:  (1) first degree murder; and (2) criminal discharge of a weapon at an occupied dwelling.

Petitioner alleges 12 grounds for relief:  (1) due process violations arising from the trial court's decision denying petitioner's motion to suppress statements and evidence discovered during a police interrogation; (2) due process violation arising from the trial court's decision denying petitioner's motion for change of judge; (3) due process violation arising from petitioner's sentence both for his convictions of felony murder and discharging a firearm at an occupied dwelling; (4) double jeopardy violation arising from petitioner's convictions for both felony murder and discharging a firearm at an occupied dwelling; (5) due process violation arising from the trial court's decision denying defense counsel's objections; (6) due process violation arising from the trial court allowing a layperson to testify as a gang expert; (7) due process violation arising from the trial court's refusal to submit a self-defense or imperfect self-

defense instruction; (8) due process violation arising from the trial court's burden of proof instruction; (9) prosecutorial misconduct; (10) sufficiency of the evidence; (11) ineffective assistance of counsel; and (12) Fourth Amendment violation because petitioner's arrest was not supported by probable cause.  For reasons explained below, none of these grounds warrant any relief, and so the court denies his petition.

## I.    Legal Standard Governing Federal Habeas Petitions

A federal court reviews a state prisoner's challenge to matters decided in state court proceedings under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013).  This act "requires federal courts to give significant deference to state court decisions" on the merits.  *Id.*  A federal court may not grant state prisoner habeas relief for "any claim that was adjudicated on the merits in State court proceedings" unless the prisoner can show one of the following:  (1) that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).  The phrase "[c]learly established Federal law" refers to Supreme Court holdings, but not dicta.  *Lockett*, 711 F.3d at 1231.  An adjudication is "'contrary to' a clearly established law if it 'applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'"  *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A factual determination "made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision

adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless [it is] objectively unreasonable in light of the evidence presented in the state-court proceeding." (citing § 2254(d)(2))).  The petitioner bears the burden of rebutting this presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The court applies a different standard, however, to ineffective assistance of counsel claims.  "[I]n a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d)." *Strickland v. Washington*, 466 U.S. 668, 698 (1984). "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components." *Id.* at 687.  First, "the [petitioner] must show that counsel's performance was deficient." *Id.*  This requires showing that counsel did not provide "reasonably effective assistance." *Id.*  "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

## II.    Factual Background

The Kansas Supreme Court summarized the facts of petitioner's state court conviction as follows:

> Walker's convictions and sentences arose from a drive-by shooting in which 16-month-old Lexus Mathis was mortally shot in the abdomen as she slept on a couch in her family's living room.  Three days after the shooting, Walker was interrogated by police regarding the shooting.  After his admission that he had driven the vehicle from which shots were fired at the Mathis' home, Walker was charged with committing the crimes of felony murder and criminal discharge of a weapon.  A jury convicted Walker as charged.
>
> On direct appeal, [the Kansas Supreme Court] reversed Walker's convictions after determining the trial court had improperly admitted into

3

evidence statements made by Walker to police after Walker had clearly invoked his Fifth Amendment right to counsel during a custodial interrogation. *State v. Walker*, 276 Kan. 939, 80 P.3d 1132 (2003) (Walker I ).

The case was remanded and Walker was tried a second time. He was again convicted of first-degree felony murder and criminal discharge of a firearm.

A detailed description of the facts related to the shooting and the investigation can be found in *State v. Lowe*, 276 Kan. 957, 80 P.3d 1156 (2003), in which this court affirmed the conviction of Walker's codefendant, Jermane Lowe. Highly summarized, the evidence at Walker's second trial established that Walker, Lowe, and others left a club at closing. The group dispersed in separate cars. While some of the group were driving around, another car approached and fired shots. In response, Lowe, Walker, and perhaps others decided to drive to the house of a rival gang member and fire gunshots at the home. One of these shots struck Lexus Mathis.

Substantial evidence linked Walker and Lowe to the drive-by shooting. Jendayi Maples told police she was talking to Walker on her cell phone around 3:50 a.m., the approximate time of the shooting. During the conversation she heard Walker talking to Lowe and heard Walker ask Lowe if he "got the Tec," a semiautomatic weapon. Maples heard "that's the house," a series of about nine gunshots, and a car speeding away. Then, the phone line went dead. Frightened, she immediately called Walker back on his cell phone. He assured her everything was fine but his ears were ringing from the shots. Cell phone records verified that the two were talking at the time Maples reported, which was also the time witnesses reported hearing the shots fired at the Mathis' home.

Also during the investigation, police found shell casings from three types of cartridges near the curb directly across from the house. The State argued to the jury that the location of the casings indicated that the car had come to a stop while shots were fired from three guns and then additional shots were fired while the car was moving away.

There was evidence that on the night of the shooting Lowe was driving a maroon 1989 Toyota Camry belonging to Scott Shaffer. When Walker returned the Camry to Shaffer, the windshield was damaged from projectiles and the trunk latch was broken. Shell casings were found in the car. Ballistics testing revealed that the casings found in the car were fired from the same gun as some of the shells found at the scene of the shooting. The State argued that the physical evidence of where the shell casings were located in the car supported a conclusion that the driver of the car had fired shots. Latent fingerprints in the car did not match Lowe's or Walker's.

In his defense, Walker presented the testimony of Lowe, who denied that Walker had been with him on the night of the shooting. Another witness testified

that Lowe asked the witness to go with him.  The witness described the car that
Lowe was driving; the description did not match the description of the car which
Walker had driven that night.

*State v. Walker*, 153 P.3d 1257, 1263–64 (Kan. 2007).

Petitioner appealed his conviction to the Kansas Supreme Court through counsel.

Petitioner raised the following issues on appeal:  (1) his confession was involuntary and thus the

district court had erred by refusing to suppress the statements and evidence discovered as a result

of his confession; (2) the trial court judge should have recused; (3) the district court erred by

sentencing him for both felony murder and discharge of a firearm; (4) the district court erred by

using his prior juvenile convictions to increase the sentence; and (5) the increased sentence for

discharge of a firearm was unconstitutional because it constituted vindictive sentencing.  On

March 23, 2007, the Kansas Supreme Court rejected these arguments and affirmed petitioner's

convictions and sentence.  *Id.* at 1257.

On March 13, 2008, petitioner filed a motion for post-conviction relief under Kan. Stat.

Ann. § 60-1507 ("§ 60-1507 motion") in the District Court of Sedgwick County, Kansas.  His

motion raised four issues:  (1) he was illegally arrested without probable cause; (2) his statements

were obtained in violation of his right to remain silent; (3) the district court violated his due

process rights by denying his request to sequester witnesses; and (4) he received ineffective

assistance of counsel for not raising the first three issues.  On July 10, 2008, petitioner filed an

amended motion under Kan. Stat. Ann. § 60-1507, without leave of the court.  The amended

motion raised nine more issues that are subjects of this federal habeas petition.

On August 28, 2008, the district court denied petitioner's request to amend his original

§ 60-1507 motion to include his new issues.  And, on September 11, 2008, the district court

denied petitioner's original request for relief under § 60-1507.

5

Petitioner appealed, raising the following claims:  (1) no probable cause existed to arrest the petitioner; (2) his counsel was ineffective by failing to move to sequester a witness; and (3) the district court erred by denying petitioner's request to amend his § 60-1507 motion.  On June 11, 2010, the Kansas Court of Appeals affirmed the district court's decision.  *Walker v. State*, 256 P.2d 896, 2010 WL 2545645, at *1 (Kan. Ct. App. June 11, 2010) (unpublished table opinion).

Petitioner filed a Petition for Review with the Kansas Supreme Court.  On January 20, 2012, the Kansas Supreme Court granted petitioner's Petition for Review and summarily reversed the court of appeals' decision.  The Kansas Supreme Court remanded the case for the appellate court to reconsider plaintiff's amended § 60-1507 motion under *Thompson v. State*, 270 P.3d 1089 (Kan. 2011).

On remand, the Kansas Court of Appeals found that the issues in petitioner's amended § 60-1507 motion were procedurally barred except for two:  (1) whether petitioner was illegally arrested without probable cause; and (2) whether petitioner received ineffective assistance of counsel when his counsel failed to move for a witness' sequester.  *Walker v. State*, 270 P.3d 1229, 2012 WL 686685, at *5–6 (Kan. Ct. App. Feb. 17, 2012) (unpublished table opinion).  The court of appeals remanded the case to the district court to determine if those two issues had merit.  *Id.* at *6.  Petitioner never filed a Petition for Review of the Kansas Court of Appeals' decision that many of his grounds for relief were time-barred.

On October 26, 2012, the district court denied petitioner's request for relief on the two remanded issues.  On August 1, 2014, the Kansas Court of Appeals affirmed the district court's decision.  *Walker v. State*, 329 P.3d 1253, 2014 WL 3843084, at *1 (Kan. Ct. App. Aug. 1, 2014) (unpublished table opinion).  Petitioner then filed a Petition for Review to the Kansas Supreme

Court.  On September 14, 2015, the Kansas Supreme Court denied review.  Petitioner filed for federal habeas corpus relief under 28 U.S.C. § 2254 in our court on October 23, 2015.  Doc. 3. As stated in his Petition, petitioner raises 12 grounds for relief.  The court addresses each of them below.

## III.  Analysis

### A.  Exhaustion and Procedural Default

The State contends that petitioner procedurally defaulted on some of the claims he now raises.  Doc. 20.  Procedural default occurs only after a petitioner fails to exhaust his state court remedies, as required by 28 U.S.C. § 2254(b)(1).  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."); *id.* at 848 (explaining that courts consider exhaustion first, then ask whether the petitioner "has properly exhausted" his state-court remedies).  To exhaust his state court remedies, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

"The exhaustion requirement . . . is grounded in principles of comity and reflects a desire to protect the state courts' role in the enforcement of federal law." *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (citation and internal quotation marks omitted).  Like federal courts, state courts must enforce federal law.  *O'Sullivan*, 526 U.S. at 844.  A petitioner exhausts his claim once he "fairly present[s]" the claim to state courts.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  It is "not sufficient merely that the federal habeas applicant has been through state courts." *Id.* at 275–76.

For a federal court to consider a federal constitutional claim in a habeas application, the petitioner must have fairly presented the claim to the state court so that the state court had an opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (citation and internal quotation marks omitted). "A petitioner need not invoke talismanic language or cite book and verse on the federal constitution." *Id.* (internal quotation marks omitted). Instead, the "crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Id.* (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)).

If a habeas applicant fails to exhaust a claim in state court and those remedies are no longer available when the applicant files the federal habeas application, the applicant meets the technical requirements for exhaustion because there are no state remedies available to him. *Bowles v. Kansas*, No. 15-3049-JTM, 2016 WL 3759508, at *1 (D. Kan. July 14, 2016); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). But that claim is then "subject to dismissal under the doctrine of procedural default." *Bowles*, 2016 WL 3759508, at *1; *see also Coleman*, 501 U.S. at 750. Under this doctrine, a federal court's review of the claims that were procedurally defaulted in state court is barred unless the applicant can "demonstrate either cause and prejudice for the default or that a fundamental miscarriage of justice would result if his claim is not considered." *Bowles*, 2016 WL 3759508, at *1; *see also Coleman*, 501 U.S. at 750.

Procedural default occurs in two ways: (1) when a state court clearly dismisses an issue on a state procedural ground that is both independent of federal law and adequate to support the judgment; or (2) when the petitioner fails to exhaust available state remedies and thus would be procedurally barred from presenting the issue if it was brought in state court. *Bowles*, 2016 WL

3759508, at *2.  The latter alternative is called anticipatory procedural bar.  *Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.").

Here, the State of Kansas asserts that the procedural bar doctrine precludes several of petitioner's grounds for relief.  They include petitioner's fifth ground (due process violation based on the denial of defense counsel's objections); sixth ground (due process violation based on the trial court allowing a layperson to testify as a gang expert); seventh ground (due process violation based on the failure to provide a self-defense or imperfect self-defense instruction); eighth ground (due process violation based on the burden of proof instruction); ninth ground (prosecutorial misconduct); and tenth ground (sufficiency of the evidence).  The State also asserts that petitioner's eleventh ground for relief (ineffective assistance of counsel) is partially barred by this doctrine, the lone exception being the witness sequestration issue.

Petitioner raised these claims in his amended § 60-1507 motion.  *See Walker*, 2012 WL 686685, at *5–6.  The district court denied petitioner's amended motion, and the Kansas Court of Appeals later affirmed a ruling that these claims were time-barred because they did not relate back to the original motion.  *See id.*  Petitioner did not file a Petition for Review to the Kansas Supreme Court challenging the holding that these claims were procedurally barred.  Petitioner thus has not presented these claims to the highest state court in Kansas.  So, these claims are barred by the doctrines of exhaustion and procedural default unless petitioner can meet one of the two exceptions:  (1) cause and prejudice; or (2) a fundamental miscarriage of justice.  The court considers each exception below.

### 1.   Cause and Prejudice

The Supreme Court has defined "cause"—the first element of this test—as "something external to the petitioner, something that cannot fairly be attributed to him."  *Coleman*, 501 U.S. at 753.  Two examples of external causes—not attributed to a petitioner—include:  (1) newly discovered facts or a change in the law that was not reasonably available to counsel; or (2) some interference by officials that made compliance impracticable.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Petitioner provides no excuse or cause explaining why he failed to exhaust these claims to the Kansas Supreme Court.  Because he does not argue cause for his procedural default, the court need not reach the question of actual prejudice.  *See Coleman*, 501 U.S. at 750. Petitioner thus has not met the cause and prejudice exception to procedural default.

### 2.   Fundamental Miscarriage of Justice

Petitioner also fails to show a decision not to hear his claims would produce a fundamental miscarriage of justice.  "[T]he fundamental miscarriage of justice exception seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case."  *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  To assure that the fundamental miscarriage of justice exception is applied rarely, and just in extraordinary cases, the United States Supreme Court explicitly ties this exception to the petitioner's innocence.  *Schlup*, 513 U.S. at 322.  So, to qualify for the exception, petitioner must show that he is actually innocent.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To make a credible showing of actual innocence, a petitioner must support his allegations of constitutional error with new reliable evidence . . . sufficient to show that it is more likely than not that no

reasonable juror would have convicted the petitioner in the light of the new evidence." *Frost*, 749 F.3d at 1232 (citations and internal quotation marks omitted).

Petitioner never asserts that he is actually innocent.  Also, he never presents any new reliable evidence to meet the demanding standard established by *Frost*.  So, petitioner has not shown that a fundamental miscarriage of justice will result if the court does not consider the issues asserted in grounds five, six, seven, eight, nine, ten, and eleven (with the exception of the witness sequestration issue).   Thus, the procedural default doctrine bars considering their merits.

Next, the court turns to petitioner's remaining grounds for relief in the following sections.

### B.  Ground One:  Denial of Petitioner's Motion to Suppress Statements and Evidence Discovered During a Police Interrogation

Petitioner's first ground for relief arises from the trial court's decision denying his motion to suppress statements and evidence discovered during a police interrogation because they purportedly violated his constitutional rights under the Fifth and Fourteenth Amendments.[1]  The State asserts that the Kansas Supreme Court thoroughly analyzed this claim and petitioner cannot show that the conclusion either:  (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) that the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," such that relief under § 2254 is warranted.  28 U.S.C. § 2254(d)(1)–(2).

The applicable constitutional standard for determining the voluntariness of a confession procured during a police interrogation is whether "the confession [is] the product of an

---

[1]     The State argues that Petitioner cannot raise a Fourth Amendment challenge on this issue because he was provided a full and fair opportunity to litigate this question in the state court proceedings.  Doc. 20 at 16 (citing *Stone v. Powell*, 428 U.S. 465, 494 n.37 (1976)).  Petitioner responds that he does not raise a Fourth Amendment challenge, only claims under the Fifth and Fourteenth Amendments.  Doc. 24 at 4. The court thus considers only plaintiff's Fifth and Fourteenth Amendment theories.

essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973).  A confession is involuntary if the defendant's "will has been overborne and his capacity for self-determination critically impaired." *Id.* at 225–26.  The determination of a confession's voluntariness "requires careful evaluation of all the circumstances of the interrogation." *Mincey v. Arizona*, 437 U.S. 385, 401 (1978).  When making this evaluation, a court must consider the following factors under the totality of the circumstances:  (1) the age, intelligence, and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment.  *See Schneckloth*, 412 U.S. at 226.  A court also should evaluate the interrogation, considering "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health," and whether officers provided him with *Miranda* warnings.  *Withrow v. Williams*, 507 U.S. 680, 693–94 (1993).

The Kansas Supreme Court thoroughly analyzed the voluntariness of petitioner's statements during police interrogation using the appropriate constitutional standard.  *Walker*, 153 P.3d at 1265–69.  It considered the relevant factors under the totality of the circumstances.  *See id.* (considering the voluntariness of the statements in light of petitioner's mental state, the duration and manner of the interrogation, the denial of outside contact, petitioner's age, intellect, and background, the fairness of the officer's conduct, and petitioner's language fluency).  After "examin[ing] the totality of the factors and the circumstances of the interrogation as part of [its] de novo review," the Kansas Supreme Court "conclude[d] the statement was the product of [petitioner's] free and independent will." *Id.* at 1269.  The court also concluded that none of the statements made during the inadmissible portion of the interrogation (after petitioner invoked his

right to counsel) led officers to the car driven during the drive-by shooting, and thus the trial court did not err by denying petitioner's motion to suppress evidence from the vehicle. *Id.* at 1269–71.

In his Traverse, petitioner takes issue with certain parts of the Kansas Supreme Court's analysis.  First, he asserts that denying him contact with the outside world demonstrates the coerciveness of his interrogation.  Doc. 24 at 5.  In his direct appeal, the Kansas Supreme Court rejected petitioner's assertion that he made 17 requests to speak with family members because he failed to identify the specific requests and the record did not support that number.  *Walker*, 153 P.3d at 1266.  But the court recognized that, on at least four occasions, petitioner asked to speak to a family member and officers denied each request.  *Id.* at 1267.  Petitioner does not appear to challenge this factual finding.  He also provides no citations to the record to dispute this factual finding.  The Kansas Supreme Court described the specific requests petitioner made to speak with family and determined that the officers' refusals were "not per se coercive."  *Id.*  It concluded that "neither the number of requests, the context in which they were made, nor the police officers' responses made Walker's inability to communicate coercive."  *Id.*

The Kansas Supreme Court recognized that "[w]hile isolation from the outside world can be a factor in making an interrogation coercive, it is to be expected that police will take steps to limit the ability of potential witnesses and suspects to communicate and, potentially, conspire during an investigation."  *Id.*  In his Traverse, petitioner complains that officers denied his requests to speak with his father.  Doc. 24 at 5.  Petitioner asserts that his father never was alleged to have any involvement in the criminal activity, and so officers should not have refused plaintiff's request to speak with him.  *Id.*  But the Kansas Supreme Court explained that conspiracy can occur not only between the alleged criminal suspects but also that "such

[conspiratorial] communications can occur through intermediaries such as family members." *Walker*, 153 P.3d at 1267. And the court described how petitioner asked to speak to his father immediately after officers refused to tell him what other witnesses had said to officers—the timing of which "suggests his motivation for seeking outside contact was to gather information and, in turn, explains the police officers' reluctance to grant his request." *Id.* The court's discussion and analysis of these facts was objectively reasonable under the evidence presented.

Second, petitioner contends that officers coerced his statements by threatening him with physical harm. Doc. 24 at 5. The Kansas Supreme Court also analyzed this claim. *Walker*, 153 P.3d at 1267–69. The court quoted the colloquy between Lieutenant Landwehr and petitioner. *Id.* at 1267–68. Lt. Landwehr was questioning petitioner about a witness' allegation that she heard gunshots during a cell phone conversation she had with petitioner on the night of the incident. *Id.* at 1267. From this conversation's context, it seems that petitioner was pounding the table. The colloquy describes pounding noises, and Lt. Landwehr told petitioner to sit down and not to bang on the table. *Id.* at 1267–68. And, he told petitioner that he was going to get hurt. *Id.* at 1268. The Kansas Supreme Court concluded that "[i]n context, it is clear that the comment about being hurt was not a threat but, rather, concern that [petitioner] would hurt himself." *Id.* This determination is a reasonable one considering the facts presented to the court.

Finally, petitioner asserts that the trial court should have suppressed the vehicle evidence that officers located using information gathered during petitioner's interrogation. The Kansas Supreme Court also considered this issue thoroughly. *Id.* at 1269–71. The court recognized that petitioner had provided information to officers about the vehicle after he invoked his right to counsel. *Id.* at 1270. And, thus, those statements were inadmissible. *Id.* But the court also recognized that suppression of the evidence is not required if officers can trace the evidence to an

independent and lawful source. *Id.* at 1270 (citing *Wong Sun v. United* States, 371 U.S. 471, 487–88 (1963)). The Kansas Supreme Court then considered whether the evidence that officers had gathered lawfully would have led law enforcement to the vehicle even without petitioner's statements. *Id.* The court concluded:

> The record shows that, while officers used evidence from both the admissible and inadmissible portions of [petitioner's] interrogation to investigate further into the details of the case, none of the statements made by [petitioner] in the inadmissible portion of the interrogation led officers directly to the car used in the incident. The car was located only after law enforcement followed other leads, conducted interviews of other witnesses, and assimilated independent information.
>
> The trial court correctly denied [petitioner's] motion to suppress the vehicle evidence.

*Id.* at 1270–71. The court's analysis is consistent with federal constitutional law. It also constitutes a reasonable determination of the facts considering the evidence presented.

In sum, the court finds the Kansas Supreme Court's analysis of the voluntariness of petitioner's statements was not contrary to clearly established Supreme Court law. The Kansas Supreme Court evaluated the evidence of record and applied law consistent with the standard announced in *Schneckloth*. Also, the Kansas Supreme Court's factual findings were objectively reasonable. The court thus denies petitioner's first ground for § 2254 relief.

### C. Ground Two: Denial of Petitioner's Motion for Change of Judge

Petitioner next asserts that the trial court violated his due process rights by denying his motion for change of judge. Petitioner sought recusal of the trial court judge because the judge had denied petitioner's motion for judgment of acquittal during his first trial. Petitioner also asserts that the trial judge denied him a fair trial when the judge stated that he thought that defense counsel had received telephone records that counsel denied receiving.

The Supreme Court has held that due process "requires an absence of actual bias in the trial of cases." *In re Murchison*, 349 U.S. 133, 136 (1955).  Thus, due process may require a judge's recusal when a bias or prejudice arises from an extrajudicial source—meaning a source outside the judicial proceeding at hand.  *Liteky v. United States*, 510 U.S. 540, 554–55 (1994).  But, a judge's adverse rulings usually provide no reason for recusal.  *See id.* at 555 ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."); *see also Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (stating that "adverse rulings 'cannot in themselves form the appropriate grounds for disqualification'" under the federal recusal statute, 28 U.S.C. § 144 (quoting *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992))).  Due process requires recusal only when a judge's rulings are "so extreme as to display inability to render fair judgment." *Liteky*, 510 U.S. at 551.

The Kansas Supreme Court carefully considered petitioner's argument that the denial of his motion for change of judge violated his due process rights.  *Walker*, 153 P.3d at 1271–73.  The court applied Kansas state law governing recusal.  *Id.*  This law is consistent with clearly established Federal law.  And, the Kansas Supreme Court reached a decision based on a reasonable determination of the facts.  As the court explained, petitioner filed a Motion for Change of Judge in the district court.  *Id.* at 1271.  Judge David W. Kennedy, the trial judge, denied the motion.  *Id.*  Consistent with the state statutory procedure, petitioner filed an affidavit seeking recusal of Judge Kennedy for the chief judge's consideration.  *Id.*  The chief judge of the Sedgwick County District Court—at the time Judge Richard T. Ballinger—reviewed the affidavit and held an informal hearing.  *Id.* at 1272.  After considering petitioner's claims, Judge Ballinger recognized that Judge Kennedy and defense counsel had disagreed on some rulings and events in

the past, but he concluded that the facts did not rise to the level of bias, prejudice, or partiality

requiring recusal.  *Id.*  The Kansas Supreme Court agreed with this finding because the record

failed to demonstrate either that one might reasonably question Judge Kennedy's impartiality or

the existence of actual bias or prejudice to require recusal under the Kansas statute.  The court

agrees with this conclusion.  Petitioner presents no evidence of bias, prejudice, or partiality on

the part of the trial judge that was so extreme that it rendered a fair trial impossible.

The only evidence of bias petitioner cites is the exchange between the trial judge and

defense counsel about the receipt of certain telephone records.  Doc. 24 at 8.  Petitioner asserts

that the trial judge called defense counsel a "liar" when he denied receiving the records.  *Id.*  The

record belies that description.  The Kansas Supreme Court reviewed the portion of the transcript

that petitioner cited as support for this assertion.  *Walker*, 153 P.3d at 1272.  The supreme court

explained that "[w]hen [defense counsel denied receiving the records], the judge replied:  'I think

you have.  But that doesn't make any difference.'"  *Id.*  The supreme court also noted that "[t]his

was the extent of the discussion on the matter."  *Id.*  Although this exchange shows a

disagreement between the trial judge and defense counsel, it does not rise to the level of bias or

prejudice necessary to demonstrate that a fair trial was impossible.  Petitioner thus cannot

establish that he is entitled to § 2254 relief under the second ground he asserts.

### D.  Grounds Three and Four:  Double Jeopardy Violation

Petitioner next asserts that the State of Kansas violated his right against double jeopardy

when the trial court sentenced him for two crimes—that is, felony murder and criminal discharge

of a firearm.[2]  Petitioner argues that his sentence constitutes two punishments for one offense thus violating the Double Jeopardy Clause of the Fifth Amendment.

The Fifth Amendment prohibits multiple punishments for the same crime.  *Whalen v. United States*, 445 U.S. 684, 688 (1980).  But "[t]he same act or transaction may constitute separate offenses if each offense requires some fact not required to establish the other."  *United States v. Meuli*, 8 F.3d 1481, 1485 (10th Cir. 1993) (citation omitted); *see also United States v. Dixon*, 509 U.S. 688, 696 (1993) ("The same-elements test, sometimes referred to as the '*Blockburger*' test, inquires whether each offense contains an element not contained in the other;" and if two offenses contain identical elements, then "they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution.").

The Kansas Supreme Court considered petitioner's double jeopardy argument in his direct appeal.  It recognized that both the felony murder conviction and criminal discharge of a firearm conviction "arose out of the same conduct of firing shots at the Mathis' home" and "constituted one transaction."  *Walker*, 153 P.3d at 1274.  But, the court proceeded to consider whether "by statutory definition there are two offenses or only one."  *Id.*  The court explained that it usually applies the "same-elements test" to "aid in making this determination."  *Id.*  It discussed the relevant test and applied it to the facts of petitioner's case:

> Under the same-elements test, a court may examine whether the charges in the complaint or information under different statutes require[ ] proof of an element not necessary to prove the other offense.  If so, the charges stemming from a single act do not violate the Double Jeopardy Clause.
>
> In this case, a same-elements test reveals that each offense required proof of an element not necessary to prove the other offense.  The firearm offense requires proof that the defendant discharged a firearm at an occupied dwelling, while felony murder requires proof that a person was killed during the

---

[2]  This was the only double jeopardy argument that petitioner presented to the Kansas Supreme Court.  To the extent petitioner asserts any other double jeopardy arguments, the court does not consider them because they are procedurally barred.

commission of an inherently dangerous felony.  Compare K.S.A. 21-3401(b) with K.S.A. 2006 Supp. 21-4219(b).

*Id.*  The supreme court thus concluded that each offense required proof of an element not necessary to prove the other offense.  *Id.*  Petitioner does not challenge this finding.

Besides the same-elements analysis, the Kansas Supreme Court also considered the Kansas Legislature's intent when it enacted the relevant criminal statutes.  After considering the statutory language, the court concluded that "the Kansas Legislature's intent is clear:  felony murder and felony discharge of a weapon are intended to be separate offenses for which there can be cumulative punishments."  *Id.* at 1275.  Thus, it held that "[d]ouble jeopardy does not attach to convictions under the felony-murder statute, K.S.A. 21-3401(b), and felony discharge of a firearm at an occupied dwelling, K.S.A. 2006 Supp. 21-4219(b), even if the charges arise from the same conduct."  *Id.*  And, it concluded that petitioner's sentences did not violate his right against double jeopardy.  *Id.*

The Kansas Supreme Court's decision rejecting petitioner's double jeopardy claim was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.  Instead, the state court's decision was consistent with the long-established Supreme Court precedent discussed above.  The court thus denies petitioner's third and fourth grounds for § 2254 relief.

### E.  Ground 11:  Ineffective Assistance of Counsel for Failing to Move for Sequestration of a Witness

A portion of petitioner's eleventh ground for relief asserts that his counsel was ineffective because he failed to move the trial court for an order sequestrating a witness.[3]  At petitioner's trial, Randall Reynolds, a detective with the Wichita Police Department, sat at counsel table with

---

[3]     The remaining ineffective assistance claims under the eleventh ground are procedurally barred as discussed in Part III.A *supra*.

the prosecutor.  He also testified as the State's last witness during its case-in-chief.  Petitioner argues that his counsel was ineffective because he failed to invoke the rule requiring the separation and sequestration of Detective Reynolds at trial.

When petitioner was tried, no rule in Kansas prohibited a testifying detective from sitting at the prosecution table at trial.  *See, e.g., State v. Kirkpatrick*, 184 P.3d 247, 258 (Kan. 2008), *abrogated by State v. Sampson*, 301 P.3d 276 (Kan. 2013) (citing Kansas cases that had found that allowing a detective to sit at the prosecution's table at trial is not error).  But, in 2013, the Kansas Supreme Court held that "a trial court has no discretion to permit a testifying law enforcement officer to sit at the prosecution table, regardless of the practical benefits of that practice to the prosecution."  *Sampson*, 301 P.3d at 283.  Thus, after *Sampson*, allowing a testifying law enforcement officer to sit at the prosecution table during trial is error, unless the State can demonstrate that the error is harmless.  *Id.* at 284.

Before the Kansas Supreme Court decided *Sampson*, the Kansas Court of Appeals addressed petitioner's argument that his counsel was ineffective for failing to move for sequestration of Detective Reynolds.  The court concluded that, even if counsel was ineffective, petitioner sustained no prejudice.  The court reasoned:

> Assuming arguendo that defense counsel was deficient in not moving for sequestration of the lead detective at the beginning of trial, it is apparent that [petitioner] cannot show how he was prejudiced by this conduct.  In his K.S.A. 60-1507 motion, [petitioner] merely speculates that because the detective was not sequestered, he was able to listen to all the testimony and alter and amend his own testimony to "create evidence to convict" him.  Nevertheless, [petitioner] fails to cite anywhere in the record where the lead detective changed his testimony to "create evidence" against [petitioner].  There were two trials held in this case, and Reynolds (the lead detective) testified at both trials about his investigation in the case.  A review of the record in this case shows no glaring inconsistencies or any indications of "created evidence" between Reynolds' first and second trial testimonies.  Simply put, based on the record from the trials in this case, [petitioner] is unable to establish that he was prejudiced by his defense counsel's failure to request Reynolds' sequestration early in the trial.

*Walker*, 2010 WL 2545645, at *6.  The court thus concluded that petitioner's ineffective assistance of counsel claim on this issue failed.  *Id.*

After *Sampson*, the Kansas Court of Appeals again addressed petitioner's ineffective assistance of counsel argument.  *Walker*, 2014 WL 3843084, at *4–6.  The court recited the federal constitutional standard for showing that a lawyer's representation was so inadequate that it violates the right to counsel guaranteed by the Sixth Amendment.  *Id.* at *4 (citing *Strickland*, 466 U.S. at 687–88).  The court then considered "whether [petitioner's] lawyers were constitutionally ineffective in failing to anticipate the ruling in *Sampson* during the second trial in 2004 and from then until 2007 while that case was on direct appeal."  *Id.* at *5.  "In other words, could those lawyers have reasonably predicted the court's decision in *Sampson*, thus rendering their representation of [petitioner] deficient under the Sixth Amendment?"  *Id.*

The Kansas Court of Appeals held that defense counsel was not ineffective for failing to invoke the rule that *Sampson* had not yet decided.  The court reasoned:

> A criminal defense lawyer typically will not be considered constitutionally ineffective for failing to foresee a change in the law years in the offing.  *Baker v. State*, 20 Kan. App. 2d 807, Syl. ¶ 3, 894 P.2d 221, *rev. denied* 257 Kan. 1091 (1995); *Mayo v. Henderson*, 13 F.3d 528, 533–34 (2d Cir. 1994) (under *Strickland* test, "[c]ounsel is not required to forecast changes in the governing law"); *Lilly v. Gilmore*, 988 F.2d 783, 785–86 (7th Cir. 1993); *see Smith v. Murray*, 477 U.S. 527, 536, 106 S. Ct. 2661, 91 L.Ed.2d 434 (1986).  This case entails precisely that sort of situation.  As the *Sampson* decision pointed out, the court had stated in *State v. Kirkpatrick*, 286 Kan. 329, 343, 342–44, 184 P.3d 247 (2008), *abrogated by State v. Sampson*, 297 Kan. 288, 301 P.3d 276 (2013), that the practice of having a law enforcement advisory witness at counsel table was to be discouraged but the district court's contrary position did not amount to an abuse of discretion and, as a result, was not erroneous.  *Sampson*, 297 Kan. at 295.  In *Kirkpatrick*, the court surveyed Kansas authority and found no published decisions on the issue.   Several unpublished decisions from this court characterized the practice as unobjectionable, while another unpublished decision said it should be discouraged, though stopped short of declaring it reversible error.  *Kirkpatrick*, 286 Kan. at 343.  As *Kirkpatrick* pointed out, other jurisdictions have allowed law enforcement officers to be present during trial as advisory witnesses.

286 Kan. at 342–43; *see Cannon v. Mullin*, 383 F.3d 1152, 1166 (10th Cir. 2004); *United States v. Riddle*, 193 F.3d 995, 997 (8th Cir. 1999); *Poole v. State*, 207 Md. App. 614, 629, 53 A.3d 479 (2012).

> Based on the authority governing sequestration of witnesses and the prevalence of an exception to the rule for a designated advisory law enforcement officer, we find that [petitioner's] lawyers could not have anticipated the ruling in *Sampson*.  At the time of the second trial and the appeal, the Kansas Supreme Court had not yet issued *Kirkpatrick*, characterizing the practice as disfavored though permissible. Given the legal landscape, the lawyers' failure to invoke the rule to keep Detective Reynolds from sitting with the prosecutor or to raise the issue on direct appeal could not be considered constitutionally ineffective assistance of counsel.  That is true as a matter of law.  The district court, therefore, did not err in denying the claim as presented in [petitioner's] amended 60-1507 motion.

*Id.* at *5–6.

Petitioner cites no Supreme Court authority recognizing a constitutional right to sequestration of witnesses.  And the court is aware of none.  *See*, *e.g.*, *Moore v. Hornbeak*, No. C 09-03092 SBA (PR), 2012 WL 3020192, at *7 (N.D. Cal. July 24, 2012) (explaining that "since there is no Supreme Court authority recognizing a constitutional right to sequestration of witnesses, the state court's rejection of this claim could not be contrary to, or an unreasonable application of, clearly-established United States Supreme Court authority").

Instead, petitioner relies on the Kansas Supreme Court's decision in *Sampson*.  Doc. 24 at 10–11.  But, the Kansas Court of Appeals considered this argument, as cited above.  It concluded that defense counsel was not deficient for failing to raise this issue under the *Strickland* standard.  Thus, the state court decision was not contrary to, or an unreasonable application of, clearly-established United States Supreme Court authority.  The Kansas Court of Appeals' decision also was based on a reasonable determination of the facts in light of the evidence presented.  The court thus denies petitioner's eleventh ground for § 2254 relief.

### F.  Ground 12:  Probable Cause to Arrest Petitioner

Last, petitioner asserts that law enforcement lacked probable cause to arrest petitioner and thus violated his rights under the Fourth Amendment.  But, petitioner cannot raise this Fourth Amendment claim in a habeas corpus petition under existing Supreme Court precedent. In *Stone v. Powell*, the Supreme Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. 465, 494 (1976).  The Tenth Circuit has interpreted the "opportunity for full and fair consideration" to include the procedural opportunity to raise a Fourth Amendment claim, the full and fair evidentiary hearing contemplated by *Townsend v. Sain*, 372 U.S. 293 (1963), and the state court's application of the correct and controlling constitutional standards.  *See Gamble v. Oklahoma*, 583 F.2d 1161, 1164–65 (10th Cir. 1978).

Petitioner never argues that he lacked an opportunity for a full and fair hearing on the probable cause issue.  Instead, he contends that this claim does not involve a search and seizure and thus he does not invoke the Fourth Amendment.  Doc. 24 at 11.  The court disagrees.  An arrest is a seizure under the Fourth Amendment.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("An arrest, of course, qualifies as a 'seizure' of a 'person' under" the Fourth Amendment's prohibition against unreasonable searches and seizures).  Thus, his probable cause argument raises a Fourth Amendment claim.

Also, the record shows that petitioner had a full and fair opportunity to litigate this Fourth Amendment claim.  Petitioner presented the issue to the trial court in his Kan. Stat. Ann. § 60-1507 motion.  Petitioner's counsel fully briefed the issue and argued the matter at a hearing before the district court on October 5, 2012.  At the conclusion of the hearing, the district court

found that probable cause existed to arrest petitioner, and it denied the requested relief.

Petitioner then had the opportunity to appeal the issue directly to the Kansas Court of Appeals

with the assistance of newly appointed counsel.  Petitioner's counsel fully briefed the issue for

the appellate court's consideration.  The Kansas Court of Appeals sufficiently considered the

issue and denied petitioner's claim for relief.  *See Walker*, 2014 WL 3843084, at *6–8.  In its

opinion, the Kansas Court of Appeals reasonably applied the correct and controlling

constitutional standard.  *See id.* (citing *Illinois v. Gates*, 462 U.S. 213, 234–35 (1983); *Michigan

v. DeFillippo*, 443 U.S. 31, 37 (1979); *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979)

(further citations omitted)).  Under these facts, the State provided petitioner a full and fair

opportunity to litigate his Fourth Amendment claim.  Thus, the court cannot grant petitioner

federal habeas relief for any Fourth Amendment violation based on his probable cause argument.

Even if petitioner's Fourth Amendment claim is not barred by *Stone v. Powell*, the court

observes that petitioner fails to show that the Kansas Court of Appeals' decision on this issue

was based upon an unreasonable application of Supreme Court precedent or involved an

unreasonable determination of the facts.  As a consequence, petitioner deserves no relief on the

twelfth ground he asserts in his § 2254 petition.

## IV.     Evidentiary Hearing

Petitioner has filed a Motion for Evidentiary Hearing (Doc. 25).  The court denies the

motion because no need exists to conduct an evidentiary hearing.  *See Anderson v. Attorney Gen.

of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the

claim can be resolved on the record." (citation omitted)); *see also Schriro v. Landrigan*, 550 U.S.

465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes

habeas relief, a district court is not required to hold an evidentiary hearing.").

## V.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).  Although this standard does not require a movant to demonstrate that his appeal will succeed, he must "prove something more than the absence of frivolity or the existence of mere good faith."  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citation and internal quotation marks omitted).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims.  In fact, the statute forbids it."  *Id.* at 336.  The rulings that the court has made here are not the type that reasonable jurists could debate or would conclude were wrong.  The court thus declines to issue a certificate of appealability for this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Michael D. Walker's Petition for Writ of Habeas Corpus (Docs. 1, 3) is denied.

**IT IS FURTHER ORDERED THAT** petitioner's Motion for Evidentiary Hearing (Doc. 25) is denied.

**IT IS SO ORDERED.**

**Dated this 31st day of March, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**